DECISION AND JOURNAL ENTRY
{¶ 1} Hector Rivera was convicted of having sexual contact on four occasions with his girlfriend's daughter who, at the time of the sexual contact, was seven or eight years old. The primary issue on appeal is whether the victim's confusion about when the incidents of sexual contact occurred and about some of the details surrounding those incidents sufficiently impeached her testimony to render Mr. Rivera's convictions against the manifest weight of the evidence. This Court affirms Mr. Rivera's convictions because, although the victim was confused about some of the details, her testimony regarding those incidents was definite enough that this Court cannot conclude that the trial court lost its way and created *Page 2 
such a manifest miscarriage of justice by convicting him that his convictions must be reversed and a new trial ordered.
 I. {¶ 2} Mr. Rivera testified that he moved into a house on Vine Avenue in Lorain with his girlfriend and her four children around the beginning of 2000. The young girl with whom Mr. Rivera was convicted of having sexual contact, who was eleven years old at the time of his trial, was the second oldest of his girlfriend's children. She testified about four separate incidents of sexual contact.
 {¶ 3} She said that the first incident occurred at the Vine Avenue house on a Sunday afternoon during the summer of 2003, when she would have been eight years old. She testified that she had been on the front porch of the house and her mother had been cooking chicken on a barbecue grill in front of the house. Mr. Rivera called to the victim from an upstairs window and instructed her to come in. He told her to go to her room, which made her think she was in trouble. She said that Mr. Rivera followed her into the bedroom and told her to go in the closet and sit down. He then knelt on his knees and took his pants down. He pulled her feet so that she was lying down and got on top of her. Then he "went up and down" with his "private part" on her stomach. When he stopped and they got up, she had "white stuff on her dress. Mr. Rivera instructed her to throw the dress away, and she put it in the garbage in the basement. She initially testified that Mr. Rivera had not warned her not to tell anybody about this incident. Later in her testimony, *Page 3 
however, she said that Mr. Rivera had told her that, if she told what had happened, she would be taken away from her mother. Her testimony also showed confusion about whether he had told her this before or after she had changed her clothes and whether it was before of after she had disposed of the dress. Following the incident, she returned to the front porch.
 {¶ 4} The victim testified that the second incident occurred in her room at the Vine Avenue house around Christmas 2003. At first, she said it happened in the evening, but changed her testimony to say it had happened in the afternoon. She said that she was on her bed playing with a globe and Mr. Rivera got in bed with her and pulled his pants down. He placed her hand "on his private and made me go up and down on it like." She stated that he had her continue for "approximately 15 minutes," at which time he told her to stop. He pulled up his pants and left. She said there was no "white stuff in relationship to this incident.
 {¶ 5} The alleged victim testified that the third incident occurred at the Vine Avenue house during the summer of 2004, shortly before school began. She said that she was taking a shower when Mr. Rivera came into the bathroom. According to her, he opened the shower curtain, got down on his knees, and "started sucking on my private." Eventually he stopped. Although she testified that Mr. Rivera said nobody else was in the house, she also testified that he flushed the toilet to make it seem as though he had been going to the bathroom. He then left the bathroom and she finished her shower. *Page 4 
 {¶ 6} The victim testified that the fourth incident occurred at the Vine Avenue house on a weekend during the school year. She was lying on her brother's bed watching television when Mr. Rivera came into the room and got on the bed with her. He took down his pants and told her to "suck these," indicating his testicles, which she referred to as his "two circle parts." She said that she did it because he told her to. After about a minute, he got up and pulled up his pants. Again, she stated that there was no "white stuff in connection with this incident.
 {¶ 7} The victim did not tell anybody about any of the incidents until April 2005. By that time, Mr. Rivera was incarcerated on unrelated charges and no longer living in the same house with the victim and her family. She saw a news report about a bus driver who had molested some children, and that caused her to tell her mother about the incidents with Mr. Rivera. Her mother reported the incidents.
 {¶ 8} As mentioned previously, Mr. Rivera testified that he began sharing the Vine Avenue house with his girlfriend and her children around the beginning of 2000. In January 2003, he was arrested during a drug raid on the Vine Avenue house. He continued to share that house until March or April 2003, when he moved in with his father. At that same time, his girlfriend and her children moved in with the girlfriend's mother. In September 2003, Mr. Rivera moved back in with his girlfriend and her children, this time at a house on South Central Drive in Lorain. They shared that house until March 2004, when he was incarcerated on *Page 5 
the drug charges growing out of the January 2003 raid. If his testimony is true, neither he nor the alleged victim was living at the Vine Avenue house during the time that, according to her testimony, the incidents had occurred at that house.
 {¶ 9} On redirect examination, the prosecutor questioned the victim about when she and her family had moved from the Vine Avenue house. At first she stated that it had been during 2004. When asked about the relationship between Mr. Rivera's arrest and their move from the house, she said that they had moved a couple of weeks after the arrest. The prosecutor then asked whether, if the arrest was in 2003, they would have moved from the house during 2003. She responded affirmatively and said that, if that was true, the incidents she testified about must have happened earlier than she had thought:
 Q: And, if that happened, if you left that house in 2003, then these incidents might have happened to you with the Defendant in 2002?
 A: Yes. And one of them — some of them might have happened in 2003. And it must have been the end of 2003 when we must have moved. Probably was.
 II. {¶ 10} Mr. Rivera was indicted on two counts of rape, violations of Section 2907.02 of the Ohio Revised Code, and two counts of gross sexual imposition, violations of Section 2907.05 of the Ohio Revised Code. He waived his right to a jury and was tried to the court. The court found him guilty of four counts of gross sexual imposition, and he appealed to this Court. He has assigned four errors. *Page 6 
 III. A. {¶ 11} Mr. Rivera's first assignment of error is that the trial court incorrectly permitted Christina Turcola to testify as an expert witness. Ms. Turcola is a social worker with Lorain County Children Services. She testified that, in April 2005, she received a referral about alleged sexual abuse involving Mr. Rivera's girlfriend's daughter. She initially visited with the victim at her school for the purpose of answering any questions she might have. About a week later, Ms. Turcola, along with a detective from the Lorain Police Department, met with the victim and interviewed her regarding the alleged sexual abuse. Ms. Turcola testified that the victim described four incidents of sexual contact, just as she testified at trial.
 {¶ 12} During Ms. Turcola's direct examination, the prosecutor asked about her experience regarding child sexual abuse. Ms. Turcola testified that she had been working with sexual abuse victims since May 2000. The prosecutor then asked whether it is common for a child to delay reporting such abuse. Mr. Rivera's counsel objected, saying that the prosecutor was attempting to elicit expert testimony from Ms. Turcola and had not provided him with an expert report. At that point, the prosecutor said he would limit his question to Ms. Turcola's experience with cases she had handled:
 MR. JANIK: Well, let me ask her this, Your Honor. I'll just ask in her caseload. I will not ask her her expert opinion. *Page 7 
 THE COURT: Fine.
The prosecutor then, without objection from Mr. Rivera, asked her about her experience with cases she had handled:
 Q: Just in your experience with your caseload, is it common for child victims to delay disclosure of sexual abuse?
 A: Yes.
 Q: Okay. That has been your experience personally with your caseload?
 A: It has been.
 {¶ 13} By failing to object to Ms. Turcola's testimony regarding her experience with her cases, Mr. Rivera waived any error involved in the court's allowance of that testimony:
 [A]n appellate court need not consider an error which a party complaining of the trial court's judgment could have called, but did not call, to the trial court's attention at a time when such error could have been avoided or corrected by the trial court.
State v. Williams, 51 Ohio St. 2d 112, 117 (1977). Even if Mr. Rivera had not waived this assigned error, it would have to be overruled. Mr. Rivera has based his argument that he was entitled to a report from any proposed expert on Rule 14.1 of the Lorain County Local Rules. As this Court recognized in State v. Spikes, Lorain App. No. 05CA008680,2006-Ohio-1822, at ¶ 29, however, discovery in criminal matters is controlled by Rule 16 of the Ohio Rules of Criminal Procedure. Mr. Rivera has not suggested that the State failed to comply with its obligations under that rule and, to the extent that Rule 14.1 can be read as *Page 8 
imposing any obligation beyond those imposed by Rule 16, it is ineffective. Accordingly, Mr. Rivera's first assignment of error is overruled.
 B. {¶ 14} Mr. Rivera's second assignment of error is that the trial court incorrectly allowed Ms. Turcola to vouch for the alleged victim's veracity in violation of State v. Boston, 46 Ohio St. 3d 108 (1989) (overruled on other grounds). Significantly, the testimony about which he has complained came during his counsel's cross-examination of Ms. Turcola:
 Q: How many children have you discovered have made false allegations of sexual abuse?
 A: None.
 Q: Are you aware that some children out there make false allegations of sexual abuse?
 A: I don't know them personally.
 Q: You don't even know if that's possible. I mean, as far as you're concerned, everybody that's come in and told you about sexual abuse is telling the truth and it happened, right?
 MR. JANIK: Are we limiting this to her experience, Your Honor, as well?
 Q: Your own experience.
 A: No one has changed their story to me.
 {¶ 15} A party is not "permitted to take advantage of an error which he himself invited or induced the trial court to make." State v.Carswell, Summit App. No. 23119, 2006-Ohio-5210, at ¶ 21 (quotingState ex rel. Bitter v. Missig, *Page 9 72 Ohio St. 3d 249, 254 (1995)). It is not clear that Ms. Turcola's testimony was, in effect, vouching for the victim's veracity. To the extent that it was, and to the extent that the trial court's allowance of that testimony was error, however, that error was invited by Mr. Rivera. He cannot take advantage of it before this Court. Mr. Rivera's second assignment of error is overruled.
 C. {¶ 16} Mr. Rivera's third assignment of error is that his convictions are not supported by the weight of the evidence. He has relied upon the alleged victim's confusion about when the incidents of sexual abuse took place and certain details regarding those incidents to argue that her testimony should be given "no credit."
 {¶ 17} When a defendant argues that his conviction is against the manifest weight of the evidence, an appellate court must review the entire record:
 [A]n appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.
State v. Otten, 33 Ohio App. 3d 339, 340 (1986). This Court has reviewed and weighed the testimony that was before the trial court. It recognizes that the alleged victim gave somewhat conflicting accounts about when the incidents of sexual abuse occurred and about some of the details of those incidents. In view of her age at the time of the alleged abuse and the amount of time that elapsed between those incidents and her testimony at trial, the discrepancies were *Page 10 
understandable. Her testimony about Mr. Rivera's actions was definite enough that this Court cannot conclude that the trial court lost its way and created such a manifest miscarriage of justice in finding Mr. Rivera guilty of four counts of gross sexual imposition that those convictions must be reversed and a new trial ordered. Mr. Rivera's third assignment of error is overruled.
 D. {¶ 18} Mr. Rivera's final assignment of error is that his trial counsel was ineffective because he failed to call Mr. Rivera's father and the victim's mother as witnesses. According to him, they would have been able to testify regarding when he lived with the victim's family and when he lived elsewhere. Presumably, it is his position that they would have supported his testimony that neither he nor the victim was living in the Vine Street house at the time when, according to her testimony, the sexual abuse occurred.
 {¶ 19} In order to show ineffective assistance of counsel, a defendant must satisfy a two prong test:
 First, [he] must show that counsel's representation fell below an objective standard of reasonableness and, second, [he] must show that the deficient performance prejudiced [his] defense.
State v. Turner, Summit App. No. 17010, 1995 WL 434375, at *2 (July 19, 1995) (citing Strickland v. Washington, 466 U.S. 668, 687 (1984)). "To demonstrate prejudice, [the defendant] must prove that `there exists a reasonable probability that, were it not for counsel's errors, the result of the [proceeding] would have *Page 11 
been different.'" Id. (quoting State v. Bradley, 42 Ohio St. 3d 136, paragraph three of the syllabus (1989)) (second bracket added by the court in Turner).
 {¶ 20} When the claimed ineffectiveness is a failure to call certain witnesses, a defendant will never be able to establish prejudice on a direct appeal because the appellate court is limited to facts that appear in the record before the trial court. This Court cannot assume that Mr. Rivera's father's and girlfriend's testimony would have supported his position that he and the victim were not living in the house at the time she initially claimed the abuse occurred. Besides, even if it were possible to assume that their testimony would have supported his position, that would not lead this Court to conclude that "there exists a reasonable probability" that that testimony would have led to a different result in this case. Id. As discussed in connection with Mr. Rivera's third assignment of error, the victim's confusion about when the abuse occurred and about certain other details is understandable considering her age and the time between the alleged abuse and Mr. Rivera's trial. Further evidence of that confusion would not establish a reasonable probability of a different outcome. Accordingly, Mr. Rivera's fourth assignment of error is overruled.
 IV. {¶ 21} Mr. Rivera's assignments of error are overruled. The judgment of the trial court is affirmed.
 Judgment affirmed. *Page 12 
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App. R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App. R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App. R. 30.
Costs taxed to appellant.
CLAIR E. DICKINSON FOR THE COURT
 SLABY, P. J. MOORE, J. CONCUR *Page 1