[Cite as *State v. Johnson*, 2012-Ohio-3812.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 97698**

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## BRIAN JOHNSON

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-552651

**BEFORE:** Rocco, J., Jones, P.J., and S. Gallagher, J.

**RELEASED AND JOURNALIZED:** August 23, 2012

**ATTORNEY FOR APPELLANT**

Gayl M. Berger
24100 Chagrin Blvd., #330
Cleveland, OH 44122

**ATTORNEY FOR APPELLEE**

Norman Schroth
Asst. County Prosecutor
The Justice Center
1200 Ontario Street, 8th floor
Cleveland, OH 44113

KENNETH A. ROCCO, J.:

{¶1} Defendant-appellant Brian Johnson ("Johnson") appeals his conviction, arguing that his conviction was against the manifest weight of the evidence, was not supported by sufficient evidence, that he did not receive effective assistance of counsel, and that the prosecution engaged in a discovery violation. Having found no merit to Johnson's assignments of error, we affirm the trial court's final judgment.

{¶2} Johnson was arrested pursuant to a police report made by ex-girlfriend, Takina Hollowell ("Hollowell"). Johnson was indicted for aggravated burglary, domestic violence, aggravated menacing, theft, and criminal damaging. The case went to a bench trial.

{¶3} Hollowell and Johnson had met in August 2008, began a relationship, and moved in together in July 2009. According to Hollowell, the two stopped living together in May 2011, because Johnson was abusive.

{¶4} Hollowell testified that on June 16, 2011, she was in her apartment sleeping, and at around 5:00 a.m. she awoke to find Johnson straddling her, choking her, and making verbal threats. Hollowell stated that she passed out and Johnson threw water on her to revive her. Hollowell's clothes were ripped and Johnson pulled extensions from Hollowell's hair. As the two tussled with one another, Hollowell hit Johnson in the

mouth, causing him to bleed.  He wiped the blood with a towel from Hollowell's laundry basket.

{¶5} Hollowell eventually broke free and ran out of the apartment hallway calling for help.  Hollowell, who was naked, testified that someone gave her a towel or blanket to cover up, though she could not describe the person.

{¶6} Johnson ran from the building.  Hollowell went back to her apartment and found that her phone and ATM/debit card were missing and that her television screen was shattered.  Because her phone was missing, she went to her grandmother's house to call Johnson's probation officer to tell him what happened.  The probation officer told Hollowell to file a police report.

{¶7} Hollowell filed a report with the Euclid Police Department.  Officer Donald Ivory ("Ivory") photographed Hollowell's injuries and went to her apartment to document the damage.  Trial exhibits included photographs of the following:  Hollowell's bruised neck and face; the ripped clothing; the hair pulled from Hollowell; the bloody towel; the shattered television; her apartment key;  and the spare key that Johnson had returned to Hollowell weeks before the incident.

{¶8} On cross-examination Hollowell was asked about the missing ATM/debit card.  Hollowell had stated that she discovered money was missing from her account by calling the bank.  She also stated that she went to use the card, and found that the money was gone.  Hollowell testified that Johnson called her numerous times while he was incarcerated during the pendency of the instant matter.

{¶9} On cross-examination, Hollowell was asked whether she knew a woman by the name of Siera Fair ("Fair"). Hollowell denied knowing anyone by that name. Hollowell testified that she believed that Johnson was motivated to attack her because she had started a relationship with another man.

{¶10} Hollowell's neighbor, Arlyse Levick ("Levick"), also testified. Levick testified that she was awoken at 4:30 a.m. by someone knocking on her door and asking that she call the police. Levick asked why she should call the police. When she did not hear a response, she decided not to answer the door and not to call the police. Levick also testified that Johnson had previously notified her that he was moving out of Hollowell's apartment.

{¶11} The next witness was Officer Ivory, who testified that he received Hollowell's police report and had met with Hollowell. He photographed Hollowell's injuries, which consisted of bruises on the sides and back of her neck and a black eye. Officer Ivory went to Hollowell's apartment where he observed the broken television, the hair that had been pulled out, and the torn clothing on the floor. He observed and photographed a towel that appeared to have fresh blood on it; no DNA analysis was performed on the towel. At the time of the investigation he believed that the key Johnson had returned to Hollowell was her apartment key. He never tried the key, though, and upon inspection in court it appeared that the key Johnson returned to Hollowell was not the apartment key.

{¶12} Detective Russell Kucinski ("Kucinski") was called to testify for the defense. Kucinski testified that the first time the topic of dismissing the case came up was when he spoke with Johnson. He testified that he had learned that following the incident, Johnson had moved back in with Hollowell. He also testified that at no point did Hollowell recant or change her story about what happened, but that she did state that she did not want him to go to jail and that they were trying to work things out. Kucinski contacted the parties, completed follow-up, and sent the case to the Grand Jury.

{¶13} Johnson took the stand in his own defense. He denied being at Hollowell's apartment on the date of the incident. He testified that he lived in "two places"; he lived with his new girlfriend, Fair, but he also continued to live with Hollowell. He admitted to keeping Hollowell's apartment key, but testified that on the date in question he was sleeping at Fair's house. Johnson testified that, on the night in question, Hollowell had called Johnson's cell phone, that Fair had answered, and that this was when Hollowell discovered that Johnson was also having a relationship with Fair. Johnson stated that Hollowell was motivated by jealousy and was lying about the attack. He denied any involvement in the burglary, the assault, or the property damage. Johnson acknowledged that he had numerous felony convictions in the past ten years.

{¶14} At the close of all the evidence, the trial court found Johnson guilty on all counts. Johnson filed his notice of appeal from the trial court's entry of final judgment and presents four assignments of error for review.

**"I.    Appellant's convictions for aggravated burglary, domestic violence, aggravated menacing, theft, and criminal damaging are contrary to the manifest weight of the evidence.**

**"II.    The state failed to present evidence sufficient to sustain appellant's convictions for aggravated burglary, domestic violence, aggravated menacing, theft, and criminal damaging.**

**"III.    Appellant was denied his Sixth Amendment right to effective assistance of counsel.**

**"IV.    The prosecution failed to comply with the requirements of Criminal Rule 16 by failing to provide all discoverable information, i.e., jail tapes."**

{¶15} We consider Johnson's second assignment of error before his first, because a reversal based on the manifest weight of the evidence can occur only if the State has first presented sufficient evidence to support a conviction.  *See State v. Thompkins*, 78 Ohio St.3d 380, 388, 678 N.E.2d 541 (1997).   When reviewing whether the verdict was supported by sufficient evidence we determine whether "after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."   *State v. Leonard,* 104 Ohio St.3d 54, 2004-Ohio-6235, 818 N.E.2d 229, ¶77, quoting *State v. Jenks,* 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶16} Johnson argues that there was no sign of forced entry and no evidence as to how he got into Hollowell's apartment.   First, evidence was presented as to how Johnson

may have gotten into Hollowell's apartment. Johnson admitted that he had a key that he never returned to Hollowell. Second, Ohio law has long held that the force element for an aggravated burglary charge is established through the opening of a closed but unlocked door. *See State v. Lane*, 50 Ohio App.2d 41, 46, 361 N.E.2d 535 (10th Dist. 1976). *See also State v. Austin*, 2d Dist. No. 20445, 2005-Ohio-1035, ¶17, *overruled on other grounds* (evidence that the defendant turned a door knob of an unlocked door in order to enter an apartment was sufficient proof of forcible entry).

{¶17} In the instant case Hollowell testified that she was sleeping in her apartment and was awoken by Johnson choking her. Johnson did not live at the apartment. After Johnson had moved out, Hollowell had taken back from Johnson what she thought was her apartment key. Johnson did not have permission to come into the apartment that night. Hollowell's testimony provides sufficient evidence of forcible entry.

{¶18} Assuming arguendo that Johnson had permission to enter Hollowell's residence, permission can be revoked upon an act of violence against a person who has the authority to revoke the privilege of initial entry. *State v. Steffen*, 31 Ohio St.3d 111, 115, 509 N.E.2d 383 (1987). Once Johnson began attacking Hollowell, any supposed permission to enter her apartment was revoked. Because there was sufficient evidence of forcible entry, Johnson's argument to the contrary is not well taken.

{¶19} Johnson also argues that his conviction was not supported by sufficient evidence because the police failed to properly investigate Hollowell's allegations. He argues that the police should have corroborated Hollowell's statement that   money was

missing from her bank account; that they should have produced the jailhouse phone conversations between Hollowell and Johnson; that Hollowell's torn clothing should have been brought in as evidence; and that the bloody towel should have been tested for DNA. According to Johnson, his conviction is based on solely on Hollowell's unsubstantiated and inconsistent testimony. We disagree.

{¶20} First, the prosecution did not rely on Hollowell's testimony alone. Levick testified that she heard someone knock on her door asking that she call the police. Officer Ivory testified that when Hollowell came to the police station to file a report, she had bruises around her neck and on her face. Photographic evidence depicted Hollowell's injuries. Other photographic exhibits identified Hollowell's shattered television set, Hollowell's torn clothing, clumps of Hollowell's extensions that had been pulled out of her head, and the bloody towel. The judge also had the opportunity to hear both Hollowell's and Johnson's versions of what happened on the night in question.

{¶21} Second, while Johnson may believe that all potential leads were not investigated by police, failure to exhaust all leads is not tantamount to insufficient evidence. The State produced testimony and photographic evidence that supported it's theory of the case. Viewing the evidence in a light most favorable to the prosecution, we conclude that any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Accordingly, we overrule this assignment of error.

{¶22} We also find no merit in Johnson's assertion that his verdict was against the manifest weight of the evidence. In evaluating the manifest weight of the evidence, this court sits as the thirteenth juror. We review the entire record, weigh the evidence and all reasonable inferences, consider the witnesses' credibility, and determine whether the jury clearly lost its way such that there was a manifest miscarriage of justice. *Thompkins*, 78 Ohio St.3d at 387, 678 N.E.2d 541. We grant a new trial only in the exceptional case where the evidence weighs heavily against the conviction. *Id.*

{¶23} According to Johnson, Hollowell's testimony was not credible and was inconsistent. Johnson argues that Hollowell had a motivation to lie, because she was jealous that Johnson had been with another woman. According to Hollowell's testimony, it was Johnson who was motivated by jealousy: he attacked Hollowell because she had begun a new relationship. Johnson argues that Hollowell is not credible because she was inconsistent in her explanation about how she determined that money was missing from her bank account. Hollowell had stated that she discovered money was missing by calling the bank, but she also stated she found out when she had tried to use her ATM card at a machine. Johnson also points out that Hollowell stated that the attack began at 5:00 a.m., whereas Levick testified that she was awoken by a knock at 4:30 a.m. Further, Hollowell testified that she made repeated requests that Levick call the police, whereas Levick heard only one request.

{¶24} Both Hollowell and Johnson testified at trial. The court was in the best position to weigh the witnesses' credibility. Any inconsistencies in Hollowell's

testimony were not of the sort that would lead us to find a manifest miscarriage of justice.

Having reviewed the trial transcript, we cannot say that the trial court clearly lost its way in crediting Hollowell's version of events over Johnson's. Accordingly, this assignment of error is overruled.

{¶25} In his third assignment of error Johnson asserts that he was denied his Sixth Amendment right to effective assistance of counsel. To succeed on a claim of ineffective assistance of counsel the defendant must show that "(1) the performance of defense counsel was seriously flawed and deficient and (2) the result of the defendant's trial or legal proceeding would have been different had defense counsel provided proper representation." *State v. Griffith*, 8th Dist. No. 97366, 2012-Ohio-2628, ¶ 15 (citing *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). When determining whether counsel's performance was deficient, we generally will not find ineffective assistance of counsel simply because a tactical or strategic trial decision proves unsuccessful. *State v. Carter*, 72 Ohio St.3d 545, 558, 651 N.E.2d 965 (1995).

{¶26} Johnson cites to a number of decisions made by his trial counsel that he believes constitute ineffective assistance of counsel. Johnson asserts that counsel should have requested bank records verifying that Johnson used Hollowell's ATM card, and phone records confirming that Hollowell bought a new phone after her old one was taken by Johnson. Johnson also argues that his counsel should have investigated whether any bills were in his name at Hollowell's address. The record does not indicate whether or not Johnson's counsel made these inquiries, so it would be entirely speculative on our part

to assume that his counsel had not looked into these matters. Accordingly, we need not further address these arguments.

{¶27} Johnson also argues that his counsel should have ordered DNA testing on the bloody towel, should have subpoenaed a representative from Key Bank to confirm whether money was missing from Hollowell's account, and should have subpoenaed his parole officer to find out when she first learned about the new charges levied against Johnson. We disagree, because these decisions could constitute sound trial strategy. For example, Johnson argues that trial counsel should have requested DNA testing of the bloody towel. But if the testing had revealed that Johnson was the source of the blood, this test could have further inculpated Johnson. The same rationale applies to bank records and to other questions trial counsel chose not to pursue at trial.

{¶28} We, likewise, cannot find ineffective assistance for counsel's failure to file a Notice of Alibi. Johnson testified that at the time of the incident, he was with his other girlfriend, Fair. According to Johnson, it was imperative that his attorney file a Notice of Alibi so that Fair could testify and back up his story.[1] On direct appeal we are limited to a review of the trial record. We agree with the Ninth District's conclusion that if "the claimed ineffectiveness is a failure to call certain witnesses, a defendant will never be

---

[1]Johnson's attorney had attempted to call Fair to testify. Hollowell had testified that she did not know Fair, and Johnson's counsel wanted to impeach Hollowell's credibility on that issue. The trial court did not allow Fair to testify, determining that her proposed testimony went only to a collateral matter. Johnson's attorney never attempted to call Fair to the stand as an alibi witness, so it is unclear whether the trial court would have allowed her to testify as to Johnson's alibi.

able to establish prejudice on a direct appeal because the appellate court is limited to facts that appear in the record before the trial court." *State v. Rivera*, 9th Dist. No. 06CA008909, 2007-Ohio-2156, ¶ 20. *See also State v. Burns*, 5th Dist. No. 10CA130, 2011-Ohio-5926, ¶ 48 (defense counsel did not provide a proffer of alleged alibi witness' proposed testimony, so record did not demonstrate that counsel was deficient for failing to call the witness to testify). This rationale extends to cases where a witness cannot be called to testify because defense counsel failed to provide a Notice of Alibi. *State v. Starks*, 9th Dist. No. 20622, 2008-Ohio-408, ¶14. A reviewing court cannot assume that the alibi witness would have supported the defendant's alibi.

{¶29} In the instant case, the record does not indicate why defense counsel did not file a Notice of Alibi, nor why he decided not to call Fair to the stand to corroborate Johnson's alibi. For all we know, this decision could have constituted sound trial strategy. Because trial counsel is presumed to be competent, and because we are constrained to a review of the trial record, we cannot find ineffective assistance of counsel on direct appeal.

{¶30} The same is true for the jailhouse tapes. Johnson argues that his trial counsel should have filed a motion to compel the prosecutor's office to provide recordings of the jailhouse phone conversations between Johnson and Hollowell. Johnson asserts that counsel should have moved for a mistrial or at least a continuance for the prosecution to provide the jailhouse tapes. As we are constrained to the record below on a direct appeal, we have no way of knowing the contents of these recordings.

Accordingly, we are not in a position to weigh in on whether defense counsel's failure to obtain the tapes amounts to ineffective assistance of counsel. Johnson's third assignment of error is overruled.

{¶31} In his fourth assignment of error Johnson argues that the prosecution failed to comply with Crim.R. 16 because it did not provide during discovery phone tapes recorded between Johnson and Hollowell while Johnson was in jail. Hollowell testified that she had spoken on the phone with Johnson "numerous times" while he was in jail, that Johnson had instructed Hollowell not to come to court to testify, and that the prosecution knew about these phone calls. Tr. 87. The prosecution did not provide copies of these recorded conversations to Johnson during discovery.

{¶32} Under Evid.R. 401, "'[r]elevant evidence is any evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Crim.R. 16 regulates the discovery process, and sets forth under what circumstances each party is required to provide discovery. The court has a number of remedies available "[i]f at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule or with an order issued pursuant to this rule." Crim.R. 16(L). "A continuance, upon proper motion, is a favored method to avoid prejudice that may flow from a failure to provide discovery yet ensure that the charges against an accused are tried timely and fairly." *State v. Bates*, 191 Ohio App.3d 85, 2010-Ohio-5636, 944 N.E.2d 1206, ¶ 11 (2d Dist.).

{¶33} However, where as here, the defendant fails to move for a continuance or to otherwise bring the discovery violation to the trial court's attention, we review only for plain error. *State v. Stembridge*, 9th Dist. No. 23812, 2008-Ohio-1054, ¶ 12. Under plain-error review, we will not reverse unless it is clear that, but for the error, the outcome would have been different. *State v. Bourn*, 8th Dist. No. 92834, 2010-Ohio-1203, ¶ 18.

{¶34} The record before us gives us no insight into the contents of the phone conversations between Hollowell and Johnson. The only testimony regarding the conversations comes from Hollowell, who testified that Johnson told her not to come and testify against him. With the lack of record evidence, we cannot say that it is clear that the outcome would have been different had the tapes been provided to Johnson. Because we find no plain error in the alleged discovery violation, we overrule the fourth assignment of error.

{¶35} The trial court's orders are affirmed.

It is ordered that appellees recover from appellants costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
KENNETH A. ROCCO, JUDGE

LARRY A. JONES, SR., P.J., CONCURS;
SEAN C. GALLAGHER, J., CONCURS
(SEE ATTACHED OPINION)

SEAN C. GALLAGHER, J., CONCURRING:

{¶36} Although I concur fully with the judgment and analysis of the majority, I write separately to raise questions about the quality of the police investigation in this case. Appellant raises a number of questions about his trial counsel's failure to seek DNA testing on a bloody towel and the failure to subpoena bank records from KeyBank regarding the victim's account. I can understand why a defense attorney does not want to create negative evidence, but I am perplexed why a police department would fail to secure readily available evidence. This was largely a case of "he said, she said," and the trial judge was in the best position to evaluate the credibility of the witnesses. Even with this evidence, it still would have been a "he said, she said" case, but it would have been a lot clearer if the police secured all the evidence available.