[Cite as *Cleveland v. Graham*, 2013-Ohio-2091.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 98858**

## CITY OF CLEVELAND

PLAINTIFF-APPELLEE

vs.

## MARION GRAHAM

DEFENDANT-APPELLANT

**JUDGMENT:**
MODIFIED AND REMANDED

Criminal Appeal from the
Cleveland Municipal Court
Case No. 2012 CRB 010582

**BEFORE:** Rocco, P.J., E.A. Gallagher, J., and Kilbane, J.

**RELEASED AND JOURNALIZED:** May 23, 2013

**ATTORNEY FOR APPELLANT**

Judith M. Kowalski
333 Babbitt Road
Suite 323
Euclid, Ohio   44123

**ATTORNEYS FOR APPELLEE**

Victor R. Perez
Chief City Prosecutor

BY: Bryan Fritz
        Assistant City Prosecutor
Justice Center
1200 Ontario Street
Cleveland, Ohio 44113

KENNETH A. ROCCO, P.J.:

{¶1} Defendant-appellant Marion Graham ("Graham") appeals from his conviction for resisting arrest under Cleveland Codified Ordinances ("CCO") 615.08(b). According to Graham, his conviction should be reversed because the trial court erred in failing to grant him a continuance, because he received ineffective assistance of counsel, because there was insufficient evidence to sustain the conviction, and because his conviction was against the manifest weight of the evidence. We conclude that the evidence was insufficient to convict Graham for resisting arrest under CCO 615.08(b), but was sufficient to convict him of the lesser offense of resisting arrest under CCO 615.08(a). Accordingly, we modify Graham's conviction and remand for resentencing.

{¶2} The incident leading to Graham's conviction took place at the Embassy Suites Hotel ("Embassy") where Graham worked as a security guard. At Graham's trial, the city of Cleveland ("the City") presented three witnesses: Officer Choat, John Pugh ("Pugh"), and Robert Siddall ("Siddall").

{¶3} Officer Choat testified that, on the night of the incident, she was an off-duty special deputy with the Cuyahoga County Sheriff's Office working for a security company at the Embassy. Officer Choat responded to a confrontation taking place in the lobby between Charles Jordan ("Jordan"), an Embassy valet, and Siddall, another Embassy security guard. Jordan pushed Siddall, and Officer Choat jumped between them, putting her arm between the two men. Officer Choat testified that Jordan grabbed

her jaw, squeezed firmly, and pushed her back. At that point, Officer Choat told Jordan that he was under arrest for assaulting a police officer. Jordan continued to pull away so as to avoid being arrested by Officer Choat, "aggressively pushed back," and was "resisting, and fighting and pulling away * * *." Tr. 104. Two other security guards became involved, attempting to help Officer Choat secure Jordan.

{¶4} Officer Choat testified that Graham took her by the arm, pulling her away from Jordan. Officer Choat told Graham to either help her arrest Jordan or to let her go. Officer Choat was then able to extricate herself from Graham. Officer Choat averred that, at another point, Graham restricted her movement by placing his forearm across her chest. She testified that she grabbed Graham's shoulders and pushed him off of her. Officer Choat testified that Graham said, "You don't want to do this," and "We all just need to calm down." Tr. 122. According to Officer Choat, as a result of the entire incident, she sustained bruising. The jury also watched a surveillance video that recorded the Embassy lobby on the night of the incident, and Officer Choat testified as to the events transpiring in the video.

{¶5} Pugh testified next. Pugh worked as a security guard at the Embassy and was in the lobby during the incident. Pugh testified that he observed the confrontation between Jordan and Siddall and that he saw Jordan shove Officer Choat by the head. According to Pugh, Graham pushed Officer Choat's hands away as she was attempting to arrest Jordan.

{¶6} Siddall testified that Jordan was angry with Siddall because of an incident that took place earlier that evening. Jordan shoved Siddall. Siddall testified that Officer Choat, Pugh, Graham, and another security guard responded to the confrontation. According to Siddall, when Officer Choat attempted to arrest Jordan, Graham grabbed her hands from behind her back trying to take the handcuffs out of her hands. Officer Choat told Graham to either help her arrest Jordan or to let her go. Siddall testified that during the course of the incident Graham said, "It doesn't have to be like this," and "We don't want no more of this." Tr. 135.

{¶7} At the close of the city's evidence, Graham moved the trial court for a continuance in order to secure three witnesses who had been served with subpoenas two days earlier. The trial court denied the motion. Graham was the sole witness testifying in his defense.

{¶8} Graham testified that he witnessed Siddall and Jordan talking. At first Graham was concerned that it would escalate into a fight, but he then observed the two turning away from each other as if the confrontation had finished. Graham testified that, at that moment, Officer Choat came out of nowhere and charged at Jordan. By the time Graham arrived at the scuffle, another Embassy employee and Jordan were both tussling with Officer Choat. Graham testified that he took it upon himself to break up the confrontation, running over to the scene and yelling, "Don't touch her." Tr. 159. Graham stretched his arms out to separate the individuals, stepping between them. Tr. 159.

{¶9} Graham testified that after he stepped between the parties, Officer Choat grabbed Graham's face with one hand, and he responded by grabbing her hand away from his face. Graham stated that Officer Choat took her other hand and grabbed Graham's face again and told Graham, "[Jordan] grabbed my face. You wouldn't let anybody do this to you. Either help me arrest him or I['ll] see to it that you're arrested too." Tr. 160. Graham testified that he chose not to help with the arrest because he had been watching Jordan and had not seen him do anything illegal. Graham stated that he, nonetheless, allowed Officer Choat to complete the arrest.

{¶10} The jury found Graham guilty of violating CCO 615.08(b), and the trial court sentenced Graham to ninety days in jail, with eighty-eight days suspended; a $750.00 fine, with $500.00 suspended; a one-year probation; and completion of the court's COP program. Graham filed a notice of appeal and presents four assignments of error for our review.

> I. The trial court erred and deprived Graham of due process by denying his request for a continuance to secure the appearance of defense witnesses.
>
> II. Graham was denied effective assistance of counsel, in violation of his Sixth Amendment rights.
>
> III. The trial court erred in denying Graham's Crim.R. 29 motion because there was insufficient evidence to sustain the conviction.
>
> IV. The guilty verdict was against the manifest weight of the evidence.

{¶11} In his first assignment of error, Graham unpersuasively argues that the trial court deprived him of his right to due process, because the trial court denied Graham's motion for a continuance to secure the appearance of defense witnesses. The decision to

grant or deny a motion for continuance is left to the broad and sound discretion of the trial judge, and we will not disturb the trial court's ruling absent an abuse of discretion. *Cleveland v. Washington*, 8th Dist. Nos. 97945 and 97946, 2013-Ohio-367, ¶ 11, citing *State v. Unger*, 67 Ohio St.2d 65, 423 N.E.2d 1078 (1981).

{¶12} A reviewing court determines on a case-by-case basis whether the trial court's denial of a continuance motion was so arbitrary as to deprive the defendant of due process, paying particular attention to the reasons presented to the trial judge at the time the request was denied. *Unger* at 67. In determining whether the trial court abused its discretion, we "weigh[] * * * any potential prejudice to a defendant [against] concerns such as a court's right to control its own docket and the public's interest in the prompt and efficient dispatch of justice." *Id.*

{¶13} Graham had requested a continuance in order to bring in three witnesses for whom he had issued subpoenas. In denying Graham's motion for a continuance, the trial court noted that although the trial had been set seven weeks prior, Graham's counsel had not issued the subpoenas until only two days prior to trial. The trial court also stated that it did not want to delay the trial any longer because there had already been a number of lengthy delays. The trial court's articulated reasons for denying the motion fall within its broad range of discretion, as the trial court expressed valid concerns about controlling its docket and efficiently dispatching justice. The trial court also acted within its discretion in considering the fact that Graham had not timely served the subpoenas on the absent witnesses.

{¶14} In support of his position that the trial court's ruling constituted an abuse of discretion, Graham relies on *State v. Dukes*, 34 Ohio App.3d 263, 518 N.E.2d 28 (8th Dist.1986). In *Dukes*, we concluded that the defendant did not receive effective assistance of counsel where the trial court had denied a motion for a continuance. Two weeks prior to trial, defense counsel had filed a motion to withdraw as counsel. The trial court did not rule on the motion until the morning of trial and refused to grant a continuance. The record revealed that the defendant had not cooperated with his counsel in preparing his defense, that he had discharged defense counsel out of mistrust, and that counsel had acknowledged that defendant's mistrust had impeded her ability to prepare a defense. Further, the defendant's basis for mistrusting his counsel was not groundless. *Id.* at 265-266. We concluded that, on these facts, failure to grant a continuance created a situation where the defendant could not receive effective assistance of counsel.

{¶15} *Dukes* was limited to the specific facts of that case, facts that we are not presented with in the instant case. Graham did not request a continuance to secure new counsel, and neither Graham nor his defense counsel indicated that their relationship was such that defense counsel could not adequately represent Graham.[1] Accordingly, *Dukes* is not on point. Because the trial court did not abuse its discretion in denying Graham's motion for a continuance, we overrule the first assignment of error.

---

[1]Although we do find that Graham's trial counsel was deficient in failing to timely serve subpoenas on the proposed witnesses, we do not conclude that counsel's deficiency required the trial court to grant the motion for a continuance.

**{¶16}** We likewise overrule the second assignment of error. Graham asserts that he was deprived of his Sixth Amendment right to effective assistance of counsel. *See Strickland v. Washington*, 466 U.S. 668, 686, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) (setting forth a criminal defendant's right to effective assistance of counsel). To determine whether a defendant received ineffective assistance of counsel, we first evaluate whether counsel's performance was deficient, meaning errors were so serious that counsel was not functioning as "counsel" guaranteed to the defendant under the Sixth Amendment. *Id.* at 687.

**{¶17}** Because our scrutiny of an attorney's performance is highly deferential, *State v. Sallie*, 81 Ohio St.3d 673, 674, 693 N.E.2d 267 (1998), we presume that counsel's conduct falls within the wide range of reasonable professional assistance, meaning it is the defendant's burden to demonstrate that the challenged action could not be considered sound trial strategy. *Strickland* at 689-690. Debatable trial tactics do not establish ineffective assistance of counsel. *State v. Conway*, 109 Ohio St.3d 412, 2006-Ohio-2815, 848 N.E.2d 810, ¶ 101.

**{¶18}** If we determine that counsel's performance was deficient under the first prong, we must then determine whether the errors prejudiced the defendant such that the defendant was deprived of a fair and reliable trial. *Strickland* at 692. We determine prejudice by analyzing whether "there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at

694. "Reasonable probability" is defined as probability sufficient to undermine confidence in the outcome. *Id.*

{¶19} Graham sets forth several bases in support of his claim that he received ineffective assistance of counsel. First, Graham asserts that defense counsel was ineffective at voir dire because he did not make any challenges for cause, used only one peremptory challenge to excuse a police officer, and did not challenge a corrections officer who ultimately sat on the jury. Second, Graham argues that defense counsel's opening statement was less than one transcript page long, and that he "said little more than that the [prosecution] could not prove its case * * * ." Graham Br. at 10. Third, Graham points out that the cross-examinations of Officer Choat and Siddall were "quite brief" and that defense counsel chose not to cross-examine Pugh at all. *Id.* Finally, Graham asserts that his counsel was ineffective for failing to issue the subpoenas for his defense witnesses until two days before the start of trial. None of these witnesses appeared on the day of trial to testify.

{¶20} With regard to the first three allegations, we presume that the choices made by defense counsel constituted sound trial strategy. There are numerous reasonable explanations for why defense counsel would decide against challenging jurors for cause and for why defense counsel would choose to retain the juror who was a corrections officer. *See State v. Abdul*, 8th Dist. No. 90789, 2009-Ohio-225, ¶ 35 ("Voir dire is largely a matter of strategy and tactics."). Graham makes no argument to overcome the

presumption that his counsel's choices fell within the wide range of reasonable professional assistance.

**{¶21}** Similarly, defense counsel's choice to make a short opening statement is also presumptively sound trial strategy as there are numerous reasons why defense counsel would opt for brevity when speaking to the jury. The choice as to how or whether to cross-examine Officer Choat, Pugh, and Siddall is also a matter of trial strategy falling within defense counsel's sound discretion, and "which this court shall not disturb * * * on appeal absent a clear showing of prejudice." *State v. Young*, 8th Dist. No. 92197, 2010-Ohio-3059,

¶ 22. Graham makes no argument to overcome the presumption that his counsel's decisions regarding cross-examination were anything less than trial strategy.

**{¶22}** Although we do find that Graham's counsel was deficient in waiting two days before trial before issuing subpoenas to defense witnesses, we cannot establish on direct appeal whether Graham was prejudiced by this deficiency. We can find no sound trial strategy for waiting until the eve of trial to attempt to procure all of Graham's defense witnesses. Two days is simply not enough time to inform all of defendant's witnesses that their appearance is required at trial. Had defense counsel chosen not to subpoena these witnesses at all, we might have determined that defense counsel had a reasonable explanation, such as a concern that these witnesses could prove damaging to Graham's defense. But once defense counsel chose to subpoena the witnesses, his failure to do so in a timely manner cannot constitute a sound trial strategy. *See State v.*

*Rankin*, 7th Dist. No. 98-BA-9, 2001 Ohio App. LEXIS 2255, *13 (May 18, 2001) (finding "no way to categorize trial counsel's [failure to subpoena witnesses] as a trial tactic," because "trial counsel's attempt to continue trial to secure the defense witnesses," demonstrated an "obvious strategy * * * to present these witnesses to contradict the [state's] testimony").

**{¶23}** We are unable to determine on direct appeal, however, whether defense counsel's deficiency prejudiced Graham. On direct appeal we are limited to a review of the record. *State v. Johnson*, 8th Dist. No. 97698, 2012-Ohio-3812, ¶ 28. Because the record gives us no indication as to how these defendants would have testified had they appeared at trial, Graham cannot demonstrate prejudice. *See id.* ("If 'the claimed ineffectiveness is a failure to call certain witnesses, a defendant will never be able to establish prejudice on a direct appeal because the appellate court is limited to facts that appear in the record before the trial court.'"), quoting *State v. Rivera*, 9th Dist. No. 06CA008909, 2007-Ohio-2156, ¶ 20. Accordingly, we overrule the second assignment of error.

**{¶24}** In his third assignment of error, Graham argues that the state's evidence was insufficient to sustain a conviction for violating CCO 615.08(b). We agree. When a defendant makes a motion under Crim.R. 29(A), the trial court shall enter a judgment of acquittal if the evidence is insufficient to sustain a conviction for the offense. When we review on appeal whether the verdict was supported by sufficient evidence, our task is to determine whether "'after viewing the evidence in a light most favorable to the

prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" *State v. Leonard,* 104 Ohio St.3d 54, 2004-Ohio-6235, 818 N.E.2d 229, ¶ 77, quoting *State v. Jenks,* 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶25} Graham was convicted for resisting arrest, under CCO 615.08(b) which provides that "[n]o person, recklessly or by force, shall resist or interfere with a lawful arrest of the person or another person and, during the course of or as a result of the interference, cause physical harm to a law enforcement officer." Accordingly, to convict Graham for violating CCO 615.08(b), the jury would have to conclude that Graham recklessly or forcefully interfered with Officer Choat's arrest of Jordan, that the arrest was lawful, and that during the course of Graham's interference or as a result of his interference, Officer Choat was physically harmed.

{¶26} We agree with Graham that there was insufficient evidence on the element of physical harm. Indeed, the evidence presented at trial indicates that Jordan was most likely the cause of Officer Choat's injuries. Officer Choat testified that she sustained bruising as a result of "the entire incident," but she does not testify that any of these bruises were caused by Graham. Other than this inconclusive testimony, there was no other evidence presented that tended to show that Graham was the cause of the bruising.

{¶27} Although we conclude that there was insufficient evidence to convict Graham for resisting arrest under CCO 615.08(b), the record does contain sufficient evidence to convict Graham for the lesser offense of resisting arrest under CCO

615.08(a). Rather than ordering an acquittal or a new trial, we have the authority to reduce a conviction to that of a lesser included offense when it is supported by the record. *State v. Miller*, 8th Dist. No. 96781, 2012-Ohio-1191, ¶ 17, citing *State v. Reddy*, 192 Ohio App.3d 108, 2010-Ohio-5759, 948 N.E.2d 454, ¶ 35 (8th Dist.). In *Miller*, we examined whether there was sufficient evidence to convict the appellant for assault on a peace officer. Although we concluded that there was insufficient evidence to prove that the appellant acted knowingly in causing or attempting to cause physical harm to the law enforcement officer, we determined that the record did contain sufficient evidence to convict the appellant for disorderly conduct, which is a lesser, included offense of assault. *Miller* at ¶ 16.

{¶28} Similarly, in the instant case, although we conclude that there was insufficient evidence to prove that Graham caused Officer Choat physical harm, the record does contain sufficient evidence to convict Graham on the lesser included offense of CCO 615.08(a), which does not require the defendant to physically harm a law enforcement officer. Rather, this provision provides that "[n]o person, recklessly or by force, shall resist or interfere with a lawful arrest of himself or herself or another."

{¶29} The testimony of the witnesses was sufficient to establish that Graham acted recklessly or forcefully in interfering with Choat's arrest of Jordan. Officer Choat testified that while she was arresting Jordan, Graham pulled her away, and later placed his forearm across her chest, preventing her from continuing her arrest of Jordan. Pugh testified that he observed Graham push Officer Choat's hands away as she was attempting

to arrest Jordan. Siddall testified that he saw Graham hold Officer Choat's hands from behind her back and observed Graham attempting to take the handcuffs out of Officer Choat's hand. Having determined that the evidence at trial sustains a conviction under CCO 615.08(a) but not under CCO 615.08(b), the third assignment of error is sustained, in part, and Graham's conviction is modified accordingly.

{¶30} In his fourth assignment of error Graham argues that his conviction was against the manifest weight of the evidence. Given our modification of Graham's conviction, this assignment of error is moot.

{¶31} The trial court's judgment is modified to reduce the conviction from a violation of CCO 615.08(b) to a violation of CCO 615.08(a). This matter is remanded for sentencing consistent with the conviction, as modified.

It is ordered that appellant recover from appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to

Rule 27 of the Rules of Appellate Procedure.

_____
KENNETH A. ROCCO, PRESIDING JUDGE

EILEEN A. GALLAGHER, J., and

MARY EILEEN KILBANE, J., CONCUR