DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
 INTRODUCTION {¶ 1} On July 9, 2006, Darnell Starks and Derek Hodges drove to Columbus, Ohio, to buy marijuana. Later that evening, they argued about whether Mr. Starks owed Mr. Hodges money for finding a supplier. Just after midnight, Mr. Hodges was shot as he stood on his front porch searching for his house key. Mr. Hodges identified Mr. Starks as the shooter.
 {¶ 2} Mr. Starks was charged with attempted murder and felonious assault, both with firearm specifications, and with improperly discharging a firearm at a residence. On the day of trial, his attorney requested a continuance because of *Page 2 
illness. The trial court denied the motion. After a two-day trial, the jury found Mr. Starks guilty of the remaining charges, and the trial court sentenced him to nine years in prison. The jury reached an impasse on the charge of attempted murder, and the trial court declared a mistrial on that charge.
 {¶ 3} Mr. Starks has argued (1) that the trial court incorrectly denied trial counsel's request for a continuance because counsel's illness left him unable to provide an adequate defense; (2) that Mr. Starks received ineffective assistance of counsel because his attorney did not file a sufficient notice of intent to present alibi testimony; and (3) that his conviction is against the manifest weight of the evidence. This Court affirms Mr. Starks' conviction because (1) any error by the trial court in denying his motion for a continuance was harmless; (2) Mr. Starks has failed to demonstrate that, if it was error for his attorney to fail to provide notice of alibi evidence, he was prejudiced by that error; and (3) this Court cannot conclude that the jury lost its way and created such a manifest miscarriage of justice by convicting Mr. Starks that his conviction must be reversed.
 FACTS {¶ 4} Mr. Hodges and Mr. Starks left Akron for Columbus at approximately 4:00 p.m. on July 9, 2006. Because Mr. Hodges did not have a valid driver's license, Mr. Starks drove in his minivan, which was in good condition. Mr. Starks wanted to purchase marijuana; Mr. Hodges claimed that he knew someone in the Columbus area who could supply it. Mr. Hodges also hoped *Page 3 
to be paid by Mr. Starks for his services once the transaction was completed. According to Mr. Hodges, Mr. Starks told him during the drive that he kept a .45 mm revolver in a pouch behind the passenger seat. Mr. Hodges did not see the gun.
 {¶ 5} The two men returned to Mr. Hodges' home between 9:00 and 10:00 p.m. and went to the basement to settle accounts. Mr. Hodges expected Mr. Starks to pay him $100 for each pound of marijuana. Mr. Starks refused. Their argument ended when Mr. Starks threw the money to the ground and Mr. Hodges left to go to a local bar.
 {¶ 6} Mr. Hodges drove home again at approximately 12:00 a.m. He heard shots as he fumbled for his house key, then glanced over his shoulder. He saw the shooter, a man dressed in dark shorts, a black basketball jersey, and a black hat. Mr. Hodges leapt over the porch rail into the front yard and was struck by a bullet that entered his chest and exited through his neck. A second bullet hit his thumb. Other bullets from a .45 mm handgun lodged in Mr. Hodges' house and the house next door. Mr. Hodges heard the shooter say, "gotcha." With the available light, Mr. Hodges recognized Mr. Starks as the shooter. According to Mr. Hodges, "it was as plain as day" and he was "a hundred percent sure" that he recognized Mr. Starks' voice. Mr. Robert Ivory, a neighbor, saw a "familiar" dark van with damage to the right side of the vehicle drive away from the scene. *Page 4 
 {¶ 7} Mr. Starks testified that he had driven to Columbus with Mr. Hodges in his own van, which was not visibly damaged; that he had purchased marijuana through Mr. Hodges' connections there; and that the two argued about money once they returned to Akron. From there, however, his version of events differed. Mr. Starks denied that he shot Mr. Hodges and, in fact, that he had ever owned a firearm. He testified that after he returned from Columbus, he spent the rest of the evening drinking at a friend's house. His wife's van, which had noticeable damage, was found near some trees behind that house. Six hours after the shooting, Mr. Starks voluntarily went to the police station to provide a statement. He was arrested shortly thereafter.
 THE REQUEST FOR A CONTINUANCE {¶ 8} Mr. Starks' first assignment of error is that the trial court incorrectly denied his attorney's request for a continuance because of illness. Even if the trial court erred in this regard, however, any error was harmless beyond a reasonable doubt because trial counsel represented Mr. Starks skillfully and without any noticeable impairment during the trial.
 {¶ 9} The decision to grant or deny a continuance is within the discretion of the trial court, which must consider all of the circumstances surrounding the request. State v. Landrum,53 Ohio St. 3d 107, 115 (1990). These include "the length of the delay requested; whether other continuances have been requested and received; the inconvenience to litigants, witnesses, opposing counsel and the court; *Page 5 
whether the requested delay is for legitimate reasons or whether it is dilatory, purposeful, or contrived; whether the defendant contributed to the circumstance which gives rise to the request for a continuance; and other relevant factors, depending on the unique facts of each case."State v. Unger, 67 Ohio St. 2d 65, 67-68 (1981). This Court reviews a trial court's determination regarding a motion to continue trial for an abuse of discretion. Id. at 67.
 {¶ 10} In this case, counsel for Mr. Starks told the trial court that he had been suffering from the flu "since the weekend" and did not believe that he could adequately represent his client at trial. He explained that Mr. Starks was not comfortable with the trial going forward under the circumstances and was willing to waive his right to a speedy trial. The trial court denied the continuance, telling Mr. Starks' attorney that "we're all professionals" and that "[w]e buck up and do what we have to do." The State later informed the trial court that counsel had appeared in court the day before in a different matter without mentioning his health or giving any outward indication of illness.
 {¶ 11} Rule 52(A) of the Ohio Rules of Criminal Procedure provides that "[a]ny error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded." In this case, even assuming that counsel for Mr. Starks was ill and that the trial court erred in denying the continuance, the record does not indicate that counsel's performance was adversely affected. Considering that Mr. Starks was not convicted of the most serious charge against him- *Page 6 
attempted murder — any error in this respect was harmless beyond a reasonable doubt.
 INEFFECTIVE ASSISTANCE OF COUNSEL {¶ 12} Mr. Starks' second assignment of error is that his attorney was ineffective because he failed to file a sufficient notice of alibi as required by Rule 12.1 of the Ohio Rules of Criminal Procedure. According to Mr. Starks, his own alibi testimony and the testimony of other witnesses would have established that he could not have been the shooter.
 {¶ 13} An appellant who argues ineffective assistance of counsel must show that counsel's performance was deficient and that prejudice resulted from the deficiency:
 First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.
Strickland v. Washington, 466 U.S. 668, 687 (1984). To show prejudice, an appellant must demonstrate that "there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." State v. Bradley, 42 Ohio St. 3d 136, paragraph three of the syllabus (1989).
 {¶ 14} This Court has concluded that "[w]hen the claimed ineffectiveness [of counsel] is a failure to call certain witnesses, a defendant will never be able to *Page 7 
establish prejudice on a direct appeal because the appellate court is limited to facts that appear in the record before the trial court."State v. Rivera, 9th Dist. No. 06CA008909, 2007-Ohio-2156, at ¶ 20. Failure to provide notice of alibi and the inability to call alibi witnesses to testify as a result leads to the same outcome in this case because, based on the record in this appeal, this Court cannot assume that Mr. Starks' alibi witnesses would have supported his position that he spent the entire evening of the shooting at another location.
 {¶ 15} Even if it were possible to assume that their testimony would have supported his position, that would not lead this Court to conclude that "there exists a reasonable probability" that that testimony would have led to a different result. See Bradley, 42 Ohio St. 3d 136 at paragraph three of the syllabus. Mr. Starks was permitted to testify with respect to his whereabouts on direct examination. Specifically, he testified that, when he returned from Columbus, he dropped the marijuana off at his home and then went to a party on Sobul Avenue, where he spent the rest of the evening drinking. Mr. Starks testified that he was still at that party when he received a call from his children's babysitter, who told him that the police had been looking for him at home. Detective John Callahan, who interviewed Mr. Starks on the morning after the shooting, also testified that Mr. Starks had told him that he had been drinking at a party at the home of "[s]ome female named Tish" on Sobul Avenue before he came to the police station. Detective Callahan found a van owned by Mr. Starks' wife parked behind the *Page 8 
home of Ms. Talisha Johnson, located at 245 Sobul Avenue. Additional testimony along these lines would not establish a reasonable probability of a different outcome. Mr. Starks' second assignment of error is overruled.
 MANIFEST WEIGHT {¶ 16} Mr. Starks' third assignment of error is that his convictions are not supported by the weight of the evidence because the testimony at trial did not support the conclusion that he was the shooter. Mr. Starks has argued that Mr. Hodges did not identify him as the shooter, but only stated that he recognized certain clothing that the shooter was wearing. He has also argued that the lack of gunshot residue evidence and the physical condition of his van indicate that the jury lost its way by concluding that he was the shooter.
 {¶ 17} When a defendant argues that his convictions are contrary to the manifest weight of the evidence, the appellate court must review and weigh all the evidence that was before the trial court:
 [A]n appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.
State v. Otten, 33 Ohio App. 3d 339, 340 (1986).
 {¶ 18} This Court has reviewed and weighed the evidence that was before the trial court and has considered the reasonable inferences that may be drawn from that evidence. While Mr. Hodges testified that he recognized the clothing *Page 9 
that the shooter was wearing, he also testified that he was able to see Mr. Starks clearly with the available light and that he recognized Mr. Starks' voice with certainty. In light of Mr. Hodges' positive identification of Mr. Starks and the other evidence produced at trial, including the length of time between the shooting and Mr. Starks' arrest, this Court cannot say that the jury lost its way and that Mr. Starks' conviction is a manifest miscarriage of justice. Mr. Starks' third assignment of error is overruled.
 CONCLUSION {¶ 19} Mr. Starks' assignments of error are overruled. The judgment of the trial court is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). *Page 10 
The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to appellant.
 SLABY, P. J. MOORE, J. CONCUR *Page 1