[Cite as *State v. Beeler*, 2015-Ohio-275.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

STATE OF OHIO

    Appellee

    v.

GEORGE W. BEELER

    Appellant

C.A. No.    27309

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.    CR 13 08 2346 (B)

DECISION AND JOURNAL ENTRY

Dated: January 28, 2015

HENSAL, Judge.

{¶1}   George Beeler appeals his conviction and sentence for aggravated robbery and having a weapon under disability in the Summit County Court of Common Pleas. For the following reasons, this Court affirms.

I.

{¶2}   Emidio Piermarini testified that, on August 25, 2013, he was working at his family's pizza shop around 2:00 a.m., when a man came in to buy a can of beer. The man was wearing a dark hooded sweatshirt over a white t-shirt, and he had the hood of the sweatshirt pulled up over his head. He also had on long jean shorts and black tennis shoes. As Mr. Piermarini counted the coins that the man handed to him to pay, the man leaped across the counter, pressed a gun against his head, and demanded the money in the cash register. After grabbing approximately $800 in ten and twenty dollar bills from the till, the man fled the store.

{¶3} After the man left, Mr. Piermarini called the police. The dispatcher passed Mr. Piermarini's description of the robber to Officer Justin Winebrenner and Officer Justin Morris, who immediately suspected Mr. Beeler. Two hours before the robbery, the officers had been driving past a gas station that is across the street from the pizza shop when the station's security officer flagged them down and asked them to make Mr. Beeler leave the premises because he was harassing its customers. According to the officers, when they spoke to Mr. Beeler at the gas station, he was wearing a white t-shirt, long jean shorts, and black shoes. He also had a dark-colored hooded sweatshirt slung over his shoulder. Officer Morris was also familiar with Mr. Beeler because he had arrested him on approximately ten prior occasions.

{¶4} The officers testified that they knew the nearby neighborhood where Mr. Beeler spent a lot of time, so they drove over to look for him. They found him with another man in front of a house, sitting on the porch stoop. Mr. Beeler was wearing a white t-shirt, long jeans shorts, and black shoes. He no longer had the hooded sweatshirt that the officers had seen him carrying earlier. As the officers neared his location, Mr. Beeler and the other man stood up quickly and began to walk in different directions. The officers stopped them, however, and brought them back to the porch steps, where they found approximately $800 in crumpled ten and twenty dollar bills.

{¶5} According to the officers, after finding the money, they put Mr. Beeler in the back of their cruiser and advised him of his *Miranda* rights. Mr. Beeler proceeded to tell them that he had received the gun from the other man and that he had originally planned to rob the gas station. He had changed his mind, however, and hit the pizza shop instead. After leaving the shop, he took off the hooded sweatshirt, wrapped the gun in it, and dropped it along the street, as he had been instructed. When the officers were unable to find the gun where he said he left it, Mr.

Beeler suggested that the other man or one of his friends must have retrieved it. The officers also brought Mr. Piermarini to the location, and he identified Mr. Beeler as the man who held up the pizza shop.

{¶6} The Grand Jury indicted Mr. Beeler for aggravated robbery with a firearm specification and having weapons while under disability. A jury found him guilty of the offenses, and the trial court sentenced him to a total of ten years imprisonment. Mr. Beeler has appealed his convictions and sentence, assigning nine errors.

II.

ASSIGNMENT OF ERROR I

THE INTRODUCTION OF EVIDENCE OF A SUGGESTIVE AND UNRELIABLE "SHOW UP" IDENTIFICATION VIOLATED BEELER'S DUE PROCESS RIGHTS UNDER THE 14TH AMENDMENT, MERITING REVERSAL.

{¶7} Mr. Beeler argues that it was improper for the officers to bring Mr. Piermarini to his location to identify him because the environment was inherently suggestive. He argues that he was the only white male that the police showed Mr. Piermarini after the crime, making his identification unreliable. Mr. Beeler did not move to suppress Mr. Piermarini's "show up" identification before trial, and failed to object to the admission of this evidence at trial. Mr. Beeler thus asserts that our review is limited to plain error.

{¶8} Assuming that plain error is applicable to this situation, we cannot say that Mr. Beeler has demonstrated plain error. *See State v. Reives-Bay,* 9th Dist. Summit No. 25138, 2011-Ohio-1778, ¶ 10 (discussing the requirement to file a motion to suppress in such situations and the language in Crim.R. 12(H) about waiver of issues not timely raised). Under Criminal Rule 52(B), "a plain error or defect that affects a substantial right may be noticed although it was not brought to the attention of the trial court." *State v. Horton*, 9th Dist. Summit No. 26407,

2013-Ohio-3902, ¶ 50. "A plain error must be obvious on the record, such that it should have been apparent to the trial court without objection." *Id*., quoting *State v. Kobelka*, 9th Dist. Lorain No. 01CA007808, 2001 WL 1379440, *2 (Nov. 7, 2001). "As notice of plain error is to be taken with utmost caution and only to prevent a manifest miscarriage of justice, the decision of a trial court will not be reversed due to plain error unless the defendant has established that the outcome of the trial clearly would have been different but for the alleged error." *Horton* at ¶ 50.

{¶9} Here, even assuming that the show-up identification was improper, Mr. Beeler has not demonstrated that his substantial rights were affected. The surveillance video of the pizza shop's lobby shows that the robber was in the store for several minutes before committing the robbery. Officer Morris, who had arrested Mr. Beeler on numerous occasions, testified that he had reviewed the surveillance video and that it is Mr. Beeler who is on the video. Accordingly, it is difficult to say that the admission of the show-up identification impacted Mr. Beeler's substantial rights in light of the other evidence presented at trial. We, therefore, conclude that Mr. Beeler has failed to establish that the trial court should have suppressed the "show up" identification testimony or that the outcome of his trial would have been different if Mr. Piermarini's testimony had not been allowed. Mr. Beeler's first assignment of error is overruled.

ASSIGNMENT OF ERROR II

THE INTRODUCTION OF EVIDENCE OF AN UNRECORDED, COERCED CONFESSION VIOLATED BEELER'S RIGHTS UNDER THE 5TH AMENDMENT, MERITING REVERSAL.

{¶10} Mr. Beeler next argues that the officers should not have been allowed to testify about what he allegedly told them in the back of their police cruiser because his statements were coerced. He contends that the officers kept him confined in the backseat of their cruiser for three hours while they searched for the missing firearm. He also contends that he was not offered any

food or drink or a chance to use a bathroom during his detention. He further contends that he suffers from bipolar disorder, which affected the voluntariness of his statements. Mr. Beeler admits that, because he did not move to suppress the officers' testimony, he is limited to arguing plain error.

{¶11} At trial, Mr. Beeler denied that he made any statements to the officers while he was confined in the back of their police cruiser. In light of his testimony, he cannot establish that he was coerced into making incriminating statements or that it was plain error for the trial court to admit them. *See State v. Lamb*, 12th Dist. Butler Nos. CA2002-07-171, CA2002-08-192, 2003-Ohio-3870, ¶ 47. Mr. Beeler's second assignment of error is overruled.

ASSIGNMENT OF ERROR III

THE INTRODUCTION OF HIGHLY PREJUDICIAL CHARACTER EVIDENCE VIOLATED BEELER'S DUE PROCESS RIGHTS UNDER THE 14TH AMENDMENT, MERITING REVERSAL.

{¶12} Mr. Beeler next argues that the trial court should not have allowed the officers to testify that his street name is "White Chocolate." According to him, police officers are only familiar with a defendant's street name if the defendant has been in trouble a lot, which implies to the jury that the defendant is a bad person. Mr. Beeler argues that the fact that he has a street name was not relevant to whether he committed the robbery, making the prosecutor's solicitation of it merely a gratuitous attack on his character. Mr. Beeler acknowledges that, because he did not object to prosecutor's questions at trial, this Court's review is for plain error.

{¶13} Both officers testified that they were familiar with Mr. Beeler, with Officer Morris indicating that he had arrested Mr. Beeler approximately ten times. Mr. Beeler also admitted that he had been convicted of burglary, theft, identity misrepresentation, breaking and entering, robbery, escape, and carrying a concealed weapon. In light of his extensive criminal

history, the fact that Mr. Beeler had a street name or that the officers were familiar with it is not remarkable. There is nothing inherent about the name "White Chocolate" that suggests that the person who goes by it is prone to criminal activity. Furthermore, there was ample evidence that Mr. Beeler was the man who committed the armed robbery. Accordingly, while we agree that the prosecutor's elicitation of Mr. Beeler's street name was gratuitous, Mr. Beeler has not established that the outcome of the trial clearly would have been different if the court had excluded the officers' testimony. *Horton*, 2013-Ohio-3902, at ¶ 50. He, therefore, has not established plain error. Mr. Beeler's third assignment of error is overruled.

### ASSIGNMENT OF ERROR IV

THE TRIAL COURT'S DENIAL OF BEELER'S MOTION TO CONTINUE HIS TRIAL IN ORDER TO PROCURE AN ACQUITTED CO-DEFENDANT'S TESTIMONY VIOLATED BEELER'S DUE PROCESS RIGHTS UNDER THE 14TH AMENDMENT AND HIS RIGHTS TO COMPULSORY PROCESS AND A FAIR TRIAL UNDER THE 6TH AMENDMENT AND THE OHIO CONSTITUTION, MERITING REVERSAL.

{¶14} Mr. Beeler next argues that the trial court incorrectly denied his motion to continue the trial so that he could locate the man he was with at the time of his arrest. According to Mr. Beeler, the other man would have corroborated his testimony that he had nothing to do with the robbery.

{¶15} "The decision to grant or deny a continuance is within the discretion of the trial court, which must consider all of the circumstances surrounding the request." *State v. Starks*, 9th Dist. Summit No. 23622, 2008-Ohio-408, ¶ 9.

These include "the length of the delay requested; whether other continuances have been requested and received; the inconvenience to litigants, witnesses, opposing counsel and the court; whether the requested delay is for legitimate reasons or whether it is dilatory, purposeful, or contrived; whether the defendant contributed to the circumstance which gives rise to the request for a continuance; and other relevant factors, depending on the unique facts of each case."

*Id.*, quoting *State v. Unger*, 67 Ohio St.2d 65, 67-68 (1981). "This Court reviews a trial court's determination regarding a motion to continue trial for an abuse of discretion." *Id.*

{¶16} After the State finished presenting its evidence, Mr. Beeler moved to continue the trial until he had a chance to speak to the other man. Mr. Beeler's lawyer told the court that he had gone to the man's house two times and had left several telephone messages, but had not heard back from him. He explained that he did not subpoena the man because he did not know the specifics of what testimony would be elicited from the man. The trial court denied Mr. Beeler's motion because the trial had already begun, the man had not been subpoenaed, and it was not known whether his testimony would be helpful to Mr. Beeler.

{¶17} Mr. Beeler did not move to continue the trial until the State had already finished presenting its evidence. He also asked for an indefinite continuance because he had been unable to locate the man. In light of the inconvenience to the jury and prosecution, we conclude that the trial court did not abuse its discretion when it denied Mr. Beeler's motion to continue on the mere possibility that the other man might corroborate his testimony. Mr. Beeler's fourth assignment of error is overruled.

## ASSIGNMENT OF ERROR V

THE STATE DID NOT PRESENT SUFFICIENT EVIDENCE TO SUPPORT BEELER'S CONVICTIONS, MERITING THEIR REVERSAL.

{¶18} Mr. Beeler next argues that his convictions are not supported by sufficient evidence because the State failed to prove that he had an operable firearm during the robbery. He notes that Mr. Piermarini admitted that he was not familiar with guns, and only believed that it was a real gun because it did not feel like it was made of plastic when it touched his forehead.

{¶19} Whether a conviction is supported by sufficient evidence is a question of law, which this Court reviews de novo. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). In

making this determination, we must view the evidence in the light most favorable to the prosecution:

> An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

*State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

{¶20} As Mr. Beeler has noted, Mr. Piermarini testified that Mr. Beeler held a gun to his head during the robbery. "Proof of the operability of a firearm can be established by circumstantial evidence, which can consist of the brandishing of a firearm by the defendant and an implicit threat to shoot it." *State v. Clayton*, 9th Dist. Summit No. 26910, 2014-Ohio-2165, ¶ 8. "[W]itness testimony that the defendant was holding a gun while committing a robbery create[s] an implicit threat to shoot and [is] sufficient proof of operability." *Id*. at ¶ 13, citing *Thompkins* at 382-384.

{¶21} Not only did Mr. Piermarini testify that Mr. Beeler held a gun to his head during the robbery, Officer Winebrenner testified that Mr. Beeler admitted to him that he had a gun during the robbery. Viewing the evidence in a light most favorable to the State, the jury could have reasonably found that Mr. Beeler possessed an operable firearm during the robbery. Mr. Beeler's fifth assignment of error is overruled.

## ASSIGNMENT OF ERROR VI

BEELER'S CONVICTIONS ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE, MERITING A NEW TRIAL.

{¶22} Mr. Beeler next argues that, for the same reason that his convictions are not supported by sufficient evidence, they are also against the manifest weight of the evidence. He

notes that Mr. Piermarini was not experienced with guns and that the police never found a gun.

If a defendant asserts that his convictions are against the manifest weight of the evidence:

> [A]n appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986).

{¶23} Mr. Piermarini testified that the object that Mr. Beeler pressed against his head was a gun because it was heavy and black and did not appear to be a BB gun. Officer Winebrenner, meanwhile, testified that Mr. Beeler admitted having a gun during the robbery. "A jury is free to believe or reject the testimony of each witness, and issues of credibility are primarily reserved for the trier of fact." *State v. Wilson*, 9th Dist. Summit No. 26683, 2014-Ohio-376, ¶ 31, quoting *State v. Rice*, 9th Dist. Summit No. 26116, 2012-Ohio-2174, ¶ 35. "A conviction is not against the manifest weight because the jury chose to credit the State's version of the events." *Id.*, quoting *State v. Minor*, 9th Dist. Summit No. 26362, 2013-Ohio-558, ¶ 28. Based on our review of the record, this Court cannot say that the jury clearly lost its way in crediting the testimony of Mr. Piermarini and Officer Winebrenner. Mr. Beeler's sixth assignment of error is overruled.

ASSIGNMENT OF ERROR VII

> BEELER'S SENTENCE IS INVALID, MERITING REMAND FOR A NEW SENTENCING HEARING, BECAUSE THE TRIAL COURT SENTENCED HIM FOR ALLIED OFFENSES OF SIMILAR IMPORT AND ABUSED ITS DISCRETION WHEN IT IMPOSED A MAXIMUM SENTENCE FOR HAVING A WEAPON WHILE UNDER DISABILITY.

{¶24} In his seventh assignment of error, Mr. Beeler argues that the trial court incorrectly sentenced him to allied offenses. He also argues that the trial court abused its

discretion when it imposed the maximum sentence for the weapon under disability charge, noting that he did not get the maximum term for his aggravated robbery conviction. This Court reviews sentences pursuant to the two-step approach set forth in *State v. Kalish*, 120 Ohio St.3d 23, 2008-Ohio-4912.

> First, [we] must examine the sentencing court's compliance with all applicable rules and statutes in imposing the sentence to determine whether the sentence is clearly and convincingly contrary to law. If this first prong is satisfied, the trial court's decision in imposing the term of imprisonment is reviewed under the abuse-of-discretion standard.

*Id.* at ¶ 26. An abuse of discretion implies that "the court's attitude is unreasonable, arbitrary or unconscionable." *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶25} Regarding whether Mr. Beeler's convictions are allied offenses, Ohio Revised Code Section 2941.25 codifies the protections of the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution and Section 10, Article I of the Ohio Constitution, which prohibits multiple punishments for the same offense. *State v. Underwood*, 124 Ohio St.3d 365, 2010-Ohio-1, ¶ 23. It provides:

> (A) [If] the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.
>
> (B) [If] the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

R.C. 2941.25. Thus, "[t]wo or more offenses may result in multiple convictions if: (1) they are offenses of dissimilar import; (2) they are separately committed; or (3) the defendant possesses a separate animus as to each." *State v. Litten*, 9th Dist. Summit No. 26812, 2014-Ohio-577, ¶ 51. The term "animus" under Section 2941.25(B) means "purpose or, more properly, immediate

motive." *State v. Logan*, 60 Ohio St.2d 126, 131 (1979). When determining whether offenses merge under Section 2941.25, this Court applies a de novo standard of review. *State v. Williams*, 134 Ohio St.3d 482, 2012-Ohio-5699, ¶ 12.

{¶26} A plurality of the Ohio Supreme Court has set forth a two-part test to analyze whether offenses are allied offenses of similar import. *See State v. Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314, ¶ 47-50. First, the court must determine "whether it is possible to commit one offense and commit the other with the same conduct, not whether it is possible to commit one without committing the other." (Emphasis omitted) *Id*. at ¶ 48. Second, "[i]f the multiple offenses can be committed by the same conduct, then the court must determine whether the offenses were committed by the same conduct, i.e., 'a single act, committed with a single state of mind.'" *Id*. at ¶ 49, quoting *State v. Brown*, 119 Ohio St.3d 447, 2008-Ohio-4569, ¶ 50 (Lanzinger, J., dissenting). If the answer is yes, the offenses will merge. *Johnson* at ¶ 50. The trial court determined that the offenses were not allied in this case because Mr. Beeler committed the offense of having a weapon while under disability as soon as he obtained possession of the gun, well before he used it to commit aggravated robbery.

{¶27} If a defendant "necessarily acquired a weapon sometime prior to committing the other crimes, the fact that he then used the weapon to commit the other crimes does not absolve [him] of the criminal liability that arises solely from his decision to illegally possess the weapon." *State v. Miller*, 8th Dist. Cuyahoga No. 100461, 2014-Ohio-3907, ¶ 45, quoting *State v. Cowan*, 8th Dist. Cuyahoga No. 97877, 2012-Ohio-5723, ¶ 39 (collecting cases). Upon review of the record, we agree with the trial court that Mr. Beeler's animus to possess a firearm was separate and distinct from his animus to rob the pizza shop. *See State v. Dillingham*, 12th

Dist. Butler No. CA2011-03-043, 2011-Ohio-6348, ¶ 28. We, therefore, reject Mr. Beeler's allied offenses argument.

{¶28} Regarding the length of the prison term that the trial court imposed for the having-a-weapon-while-under-disability charge, the Ohio Supreme Court held in *State v. Foster*, 109 Ohio St.3d 1, 2006-Ohio-856, paragraph seven of the syllabus, that "[t]rial courts have full discretion to impose a prison sentence within the statutory range and are no longer required to make findings or give their reasons for imposing maximum * * * sentences."

> [N]evertheless, in exercising its discretion, the court must carefully consider the statutes that apply to every felony case. Those include R.C. 2929.11, which specifies the purposes of sentencing, and R.C. 2929.12, which provides guidance in considering factors relating to the seriousness of the offense and recidivism of the offender.

*State v. Mathis*, 109 Ohio St.3d 54, 2006-Ohio-855, ¶ 38.

{¶29} Mr. Beeler argues that it was incongruous for the trial court to sentence him to the maximum sentence for having a weapon while under disability when it determined that he did not warrant the maximum sentence for aggravated robbery. Upon review of the record, we note that the trial court ordered Mr. Beeler to serve his three year sentence for having a weapon while under disability concurrent with his seven year sentence for aggravated robbery. Mr. Beeler has not contested the length of the sentence that he received for aggravated robbery. Accordingly, a reduction of the three year sentence would not result in Mr. Beeler being released earlier from prison. We, therefore, conclude that any error in the imposition of the having-a-weapon-while-under-disability offense is harmless. *See* Crim.R. 52(A); *State v. Payne*, 9th Dist. Summit No. 21178, 2003-Ohio-1140, ¶ 12. Mr. Beeler's seventh assignment of error is overruled.

ASSIGNMENT OF ERROR VIII

BEELER DID NOT RECEIVE THE EFFECTIVE ASSISTANCE OF COUNSEL GUARANTEED TO HIM BY THE 6TH AMENDMENT, WHICH MERITS REVERSAL.

{¶30} Mr. Beeler next argues that he received ineffective assistance of trial counsel. He argues that his lawyer should have moved to suppress Mr. Piermarini's show up identification and his alleged confession in the back of the police cruiser. He also argues that his lawyer should have objected to the testimony about his street name and should have subpoenaed the man he was with at the time of his arrest. He also argues that his lawyer should have requested a presentence investigation, which would have enlightened the court about his mental illness. He further argues that, even if none of his lawyer's mistakes, standing alone, constitute ineffective assistance, they cumulatively denied his constitutional rights.

{¶31} To prevail on a claim of ineffective assistance of counsel, Mr. Beeler must show (1) that counsel's performance was deficient to the extent that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment" and (2) that but for counsel's deficient performance the result of the trial would have been different. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). A deficient performance is one that falls below an objective standard of reasonable representation. *State v. Bradley*, 42 Ohio St.3d 136 (1989), paragraph two of the syllabus. A court, however, "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland* at 689. Further, to establish prejudice, Mr. Beeler must show that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different. *Id*. at 694.

**{¶32}** Regarding whether Mr. Beeler's lawyer should have filed a motion to suppress, we determined earlier that Mr. Beeler has not demonstrated that the admission of Mr. Piermarini's show up identification affected Mr. Beeler's substantial rights in light of the other evidence. Accordingly, he has failed to demonstrate he was prejudiced by counsel's failure to file a motion to suppress. His argument regarding his unrecorded confession, meanwhile, relies on facts that are not in the record. As there is no procedure for this Court to obtain evidence on whether Mr. Beeler was coerced into his confession, the more appropriate avenue for his argument is in a petition for postconviction relief. *State v. Sheppard*, 9th Dist. Medina No. 10CA0041-M, 2011-Ohio-3516, ¶ 8. Similarly, because there is no evidence in the record regarding the testimony that the other man who was stopped with Mr. Beeler would have presented or what a presentence investigation report would have contained, those issues are also not appropriate for review on direct appeal. We also conclude that, in light of the substantial evidence indicating that Mr. Beeler was the person who robbed the pizza shop, there is not a reasonable probability that Mr. Beeler would have been acquitted if his lawyer had objected to the prosecutor's questions about Mr. Beeler's street name. Finally, in light of the number of ineffective assistance arguments which cannot be addressed on this direct appeal, we cannot say that the cumulative effect of counsel's deficiencies affected the outcome of the trial. Mr. Beeler's eighth assignment of error is overruled.

ASSIGNMENT OF ERROR IX

> THE NUMEROUS ERRORS THAT OCCURRED DURING THE COURSE OF BEELER'S CASE CUMULATIVELY DEPRIVED BEELER OF HIS RIGHTS TO A FAIR TRIAL UNDER THE 6TH AMENDMENT, MERITING REVERSAL.

**{¶33}** Mr. Beeler's final argument is that the cumulative effect of the trial court's errors deprived him of his right to a fair trial. *See State v. Kirkland*, 140 Ohio St.3d 73, 2014-Ohio-

1966, ¶ 140. The Supreme Court of Ohio has recognized the doctrine of cumulative error. *State v. Bethel*, 110 Ohio St.3d 416, 2006-Ohio-4853, ¶ 197. However, the mere intonation of the phrase "cumulative error" is not sufficient to warrant reversal on those grounds. *Id.* In light of the record before us and Mr. Beeler's limited argument, it is overruled on that basis. *See id.* Mr. Beeler's ninth assignment of error is overruled.

## III.

**{¶34}** Mr. Beeler has not established reversible error. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

JENNIFER HENSAL
FOR THE COURT

BELFANCE, P. J.
WHITMORE, J.
CONCUR.


<u>APPEARANCES:</u>

JACQUENETTE S. CORGAN, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and RACHEL M. RICHARDSON, Assistant Prosecuting Attorney, for Appellee.