[Cite as *State v. Sanderfer*, 2015-Ohio-4285.]

COURT OF APPEALS
RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  | JUDGES: |
|---|---|---|
| STATE OF OHIO | : | Hon. W. Scott Gwin, P. J. |
|  | : | Hon. William B. Hoffman, J. |
| Plaintiff-Appellee | : | Hon. Sheila G. Farmer, J. |
|  | : |  |
| -vs- | : |  |
|  | : | Case No. 15CA4 |
| STEVEN D. SANDERFER | : |  |
|  | : |  |
| Defendant-Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:      Criminal appeal from the Richland County Court of Common Pleas, Case No. 2014CR0571R

JUDGMENT:      Affirmed

DATE OF JUDGMENT ENTRY:      October 13, 2015

APPEARANCES:


For Plaintiff-Appellee

BAMBI COUCH
Prosecuting Attorney
38 South Park Street
Mansfield, OH 44902

For Defendant-Appellant

R. JOSHUA BROWN
32 Lutz Avenue
Lexington, OH 44904

*Gwin, P.J.*

{¶1} Appellant, Steven D. Sanderfer ["Sanderfer"] appeals his convictions and sentences after a jury trial in the Richland County Court of Common Pleas for two counts of felonious assault with firearm specifications, in violation of R.C. 2903.11(A)(1) and R.C. 2903.11(A)(2), felonies of the second degree, and one count of having weapons while under disability, in violation of R.C. 2923.13(A)(3), a felony of the third degree.

*Facts and Procedural History*

{¶2} On August 6, 2014, Gerrice Stallworth and Sanderfer were in Sanderfer's vehicle. Stallworth was driving. Sanderfer wanted to go to a sports bar in Mansfield, Ohio called the "MVP." Stallworth testified that he had warrants and did not want to go in the MVP as the "cops patrol that establishment." Stallworth testified that the previous week he had been at the MVP when police officers entered and he had to jump over the back wall on the patio to avoid apprehension. Stallworth dropped Sanderfer off at MVP. Sanderfer told Stallworth he could take his car. Stallworth left and went to the Wood Street Apartments and got high.

{¶3} Stallworth left the Wood Street Apartments with two young men he really did not know and drove away, eventually going onto Grace Street. While on Grace Street, Stallworth saw a Sheriff's vehicle turn around and follow him. Stallworth panicked as he had warrants for his arrest. He turned into an alley, immediately pulled into the next driveway, and abandoned Sanderfer's vehicle.

{¶4} Stallworth returned to the vehicle a couple of hours later and it had been ransacked. The stereo and other items were missing. Stallworth described the stereo

system in the car as the best you could buy and worth a few thousand dollars. He was upset and knew Sanderfer would think he had something to do with the theft.

{¶5} The next day, August 7, 2014, Stallworth went to 3 DeWeese Place, Mansfield, Ohio to get high. When he arrived, the only person there was a female known to him as Tabby. Stallworth noted that Tabby was acting weird and texting, advising Stallworth "don't tell anybody you be over here". (T. 125). About an hour and a half after Stallworth arrived at the residence, he went out into the kitchen to wash his hands. Stallworth wanted to leave because Tabby was making him paranoid by the way she was acting.

{¶6} While in the kitchen, Stallworth turned partially around to find Sanderfer and another person, Gerald DeWitt, standing in the doorway/kitchen area. Stallworth heard Sanderfer say something, as Sanderfer shot him.

{¶7} Gerald DeWitt testified that he had known Sanderfer for approximately two years. Sanderfer routinely asked DeWitt for rides because Sanderfer did not drive. On August 7, 2014, Sanderfer called DeWitt and asked him for a ride to Sanderfer's grandmother's home. Next Sanderfer asked to go to 3 DeWeese Place because he wanted to confront a person about stealing his car and stereo.

{¶8} When the pair arrived at DeWeese Place, an older woman advised them the person Sanderfer was looking for was not at the residence. Later, the older woman called and said the person was now there, so Sanderfer and DeWitt went back to the residence. Sanderfer asked DeWitt to come into the house. DeWitt was unaware that Sanderfer had a gun.

{¶9} DeWitt, who was ahead of Sanderfer as the pair entered the home, looked in the kitchen and saw Stallworth. No one else was in the room. Sanderfer came up behind DeWitt. As DeWitt moved away from the doorway, DeWitt heard the victim saying "No, no, no". (T. 155). Within five seconds, DeWitt heard a gunshot. DeWitt observed Sanderfer walk out of the kitchen with a pistol in his hand. Sanderfer told DeWitt "Let's go".

{¶10} DeWitt and Sanderfer left the area. Sanderfer placed the gun on the floorboard of the vehicle as they drove from the scene. Sanderfer took the gun with him when DeWitt dropped him off at the home of Sanderfer's girlfriend.

{¶11} The neighbor across the street from 3 DeWeese Place was locking her door when she heard a pop. Within a minute, she noticed two men acting strangely getting into a car that was parked in the alley next to 3 DeWeese Place. Because they seemed to be in a hurry and acting oddly, she and her daughter got the license plate of the vehicle as the pair drove away. As the neighbor started to drive away, Stallworth came out of 3 DeWeese Place and said he had been shot. The neighbor called 9-1-1 and reported to officers that Stallworth told her the Sanderfer had shot him.

{¶12} Sanderfer was not located until eleven days later, on August 18, 2014. He was located hiding at the Homestead Inn, in Galion, Ohio where members of the U.S. Marshal's Task Force arrested him.

{¶13} On October 14, 2014 an indictment was filed in the Common Pleas Court of Richland County, Ohio charging Steven Sanderfer with two counts of felonious assault both of which contained firearms specifications pursuant to R.C. 2941.145, and

one count of with having a weapon while under disability in violation of R.C. 2923.13 (A) (3),

{¶14} After two days of trial, the jury found Sanderfer guilty of all counts.

{¶15} Sentencing took place on January 16, 2015. The trial court sentenced Sanderfer to seven years with a mandatory three years on the firearm specification for Count I of the indictment, felonious assault. The court found that Count I of the indictment merged with Count II of the indictment, as both were felonious assault charges. Sanderfer was sentenced to thirty-six months on Count III, the weapons while under disability charge. The sentences were ordered to be served consecutively to each other and consecutively to his sentence in Case No. 14-CR-281, for a total of fourteen years of incarceration.

*Assignment of Error*

{¶16} Sanderfer raises one assignment of error,

{¶17} "I. WHEN DETERMINING WHETHER TWO OFFENSES ARE ALLIED OFFENSES OF SIMILAR IMPORT SUBJECT TO MERGER UNDER OHIO REVISED CODE SECTION 2941.25 THE CONDUCT OF THE ACCUSED MUST BE CONSIDERED. THE TRIAL COURT ERRED IN FAILING TO MERGE THE OFFENSES OF FELONIOUS ASSAULT AND HAVING A WEAPON UNDER DISABILITY PURSUANT TO *STATE V. JOHNSON,* 128 OHIO STATE 3D 153 (2010)."

*Analysis*

{¶18} In his sole assignment of error, Sanderfer maintains his convictions for having weapons while under disability and felonious assault are allied offenses, arguing that each was done with the same animus. Therefore, Sanderfer argues the

convictions should have merged and should not have been sentenced to prison time for both offenses.

**{¶19}** R.C. 2941.25, Multiple counts states:

(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

**{¶20}** In *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.2d 892[1], the Ohio Supreme Court revised its allied-offense jurisprudence,

1. In determining whether offenses are allied offenses of similar import within the meaning of R.C. 2941.25, courts must evaluate three separate factors-the conduct, the animus, and the import.

2. Two or more offenses of dissimilar import exist within the meaning of R.C. 2941.25(B) when the defendant's conduct constitutes offenses involving separate victims or if the harm that results from each offense is separate and identifiable.

---

[1] The decision in *Ruff* was filed March 25, 2015, which was in advance of the filing of appellant's brief on April 29, 2015.

{¶21} *Ruff,* at syllabus. The Court further explained,

A trial court and the reviewing court on appeal when considering whether there are allied offenses that merge into a single conviction under R.C. 2941.25(A) must first take into account the conduct of the defendant. In other words, how were the offenses committed? If any of the following is true, the offenses cannot merge and the defendant may be convicted and sentenced for multiple offenses: (1) the offenses are dissimilar in import or significance—in other words, each offense caused separate, identifiable harm, (2) the offenses were committed separately, and (3) the offenses were committed with separate animus or motivation.

* * *

An affirmative answer to any of the above will permit separate convictions. The conduct, the animus, and the import must all be considered.

{¶22} In the case at bar, Sanderfer was convicted of two counts of felonious assault, Count I was charged under R.C. 2903.11(A)(1), "knowingly causing serious physical harm to another." Count II was a charge of felonious assault under R.C. 2903.11(A)(2), "knowingly causing or attempting to cause physical harm to another, by means of a deadly weapon or dangerous ordinance" The trial court found that Count I and Count II were allied offenses. Therefore, the trial court merged the two counts and sentenced Sanderfer only on Count I.

{¶23} R.C. 2923.13, Having weapons while under disability, as relevant to Sanderfer's case, provides as follows,

(A) Unless relieved from disability under operation of law or legal process, no person shall knowingly acquire, have, carry, or use any firearm or dangerous ordnance, if any of the following apply:

* * *

(3) The person is under indictment for or has been convicted of any felony offense involving the illegal possession, use, sale, administration, distribution, or trafficking in any drug of abuse or has been adjudicated a delinquent child for the commission of an offense that, if committed by an adult, would have been a felony offense involving the illegal possession, use, sale, administration, distribution, or trafficking in any drug of abuse.

{¶24} A "firearm" is defined under the code as "any deadly weapon capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant." R.C. 2923.11(B).

{¶25} Sanderfer does not contest the fact that he had a "firearm" and that he used it to shoot Stallworth. Sanderfer argues only that in order to be found guilty of felonious assault with a firearm specification he must necessarily have possessed a weapon. Therefore, Sanderfer contends, the two convictions must merge. We disagree.

{¶26} In *State v. Cowan*, 8th Dist. Cuyahoga No. 97877, 2012–Ohio–5723, the defendant was convicted of felonious assault, having weapons while under disability, improper handling of firearms in a motor vehicle, and discharge of a firearm near a prohibited premises. "[E]ach involved a separate animus and could not result in the commission of each other under these factual circumstances," concluded the appellate court, because the conduct underlying each offense occurred at different times. *Cowan*

at ¶39. The offense of having weapons while under disability occurred when the defendant acquired the handgun and the felonious assault occurred when he shot at the victim. The discharge and improper handling of the firearm occurred about an hour before the shooting, respectively, when the defendant fired the gun at the ground while sitting in a vehicle and when the defendant then drove away with the gun. The Court reasoned the fact that the defendant used the gun he had acquired to commit the other offenses "does not absolve [him] of the criminal liability that arises solely from his decision to illegally possess the weapon [ ]." Id. *See also, State v. Carradine,* 8th Dist. Cuyahoga No. 101940, 2015-Ohio-3670, ¶58 (carrying concealed weapon and having weapons while under disability do not merge); *State v. Beeler,* 9th Dist. Summit No. 27309, 2015-Ohio-275, ¶27(aggravated robbery does not merge with having weapons while under disability); *State v. Wilcox*, 2nd Dist. Clark No. 2013-CA-94, 2014-Ohio-4954, ¶19 (improper handling of firearms in a motor vehicle and tampering with evidence do not merge with having weapons under disability).

**{¶27}** Applying the facts and viewing Sanderfer's conduct in this case, the having a weapon while under disability occurred when Sanderfer acquired the firearm before taking it with him in the car on the day he shot Stallworth. Therefore, the conduct of firing his gun at Stallworth on August 7, 2014 was done with a separate animus than the underlying acquisition of the firearm.

**{¶28}** Sanderfer's sole assignment of error is overruled.

{¶29} The judgment of the Richland County Court of Common Pleas is affirmed.

By Gwin, P.J.,

Hoffman, J., and

Farmer, J., concur